*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0994**

State of Minnesota,
Respondent,

vs.

Curt Matthew Craven,
Appellant.

**Filed May 28, 2024**
**Reversed and remanded.**
**Connolly, Judge**

Stearns County District Court
File No. 73-CR-20-7960

Keith Ellison, Attorney General, Jacob Campion, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leah C. Graf, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Gaitas, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

On appeal from his convictions of driving while impaired (DWI) and fleeing police in a motor vehicle, appellant argues that his convictions must be reversed because the district court failed to obtain a knowing, voluntary, and intelligent waiver of counsel from

him, and erroneously deemed his right to counsel waived by dilatory conduct. Because we agree, we reverse and remand.

## FACTS

On November 30, 2020, respondent State of Minnesota charged appellant Curt Craven with fleeing police in a motor vehicle and felony DWI. Trial was scheduled to begin on June 7, 2021, but later rescheduled for June 14, 2021. But shortly before trial, the state filed an amended complaint adding a second count of felony DWI. Trial was then continued several additional times for various reasons, most of which were not attributable to Craven.

By the summer of 2022, Craven's trial was set to begin on October 11, 2022. But on September 28, 2022, Craven mailed a letter to the district court seeking to fire his private attorney and asking for a continuance so that he could find replacement counsel. The district court granted the request on October 4, 2022, stating that Craven would "be allowed a one-time continuance of trial to retain new counsel. All parties must be fully prepared to proceed to trial on [a] new trial date to be assigned by Court Administration."

The parties appeared for a hearing on November 8, 2022. Craven, who was in prison at the time on an unrelated matter, appeared without counsel. Craven informed the district court that he understood how to apply for a public defender, but that he planned to hire a private attorney instead, despite it being "nearly impossible" to access a phone to contact an attorney while in prison. After setting the trial date for January 23, 2023, a colloquy was conducted between Craven, the district court, and the prosecutor about the possibility that Craven's right to counsel could be waived by conduct and the potential consequences

2

of proceeding without an attorney. During this exchange, the district court acknowledged that it would be "more difficult" for Craven to find an attorney while being in custody. But Craven was warned several times that he could lose his right to counsel by failing to make reasonable efforts to hire a new attorney.

On December 10, 2022, Craven sent a letter to the district court requesting a continuance because he wanted to spend some "quality time" with his daughter prior to trial. Craven also explained that he had contacted approximately 20 private attorneys, but only received one response. According to Craven, the attorney wanted a $15,000 retainer, which Craven was not "comfortable" paying. A hearing was then held on December 19, 2022, at which Craven explained the difficulties in finding an attorney while in custody. And Craven explained that he did not want a public defender for various reasons. The district court denied Craven's request for a continuance, reminding Craven that he had previously been advised of the importance of having an attorney.

A final pretrial hearing was held on January 20, 2023, at which Craven appeared pro se and requested standby counsel. After questioning why Craven should be appointed standby counsel "at 5:00 p.m. on the Friday before [Craven's] Monday morning trial," the district court took the issue under advisement.

On January 23, 2023, Craven appeared for trial pro se. The district court found that Craven had waived his right to counsel by his conduct and denied his request for standby counsel. The matter proceeded to trial and a jury found Craven guilty as charged. The district court then imposed concurrent sentences of 72 months plus five years of conditional

release for one of the DWI offenses, and 22 months for the fleeing offense. This appeal follows.

**DECISION**

Craven challenges the district court's decision that he waived his constitutional right to counsel due to his conduct. This court "will only overturn a finding of a valid waiver of a defendant's right to counsel if that finding is clearly erroneous." *State v. Jones*, 772 N.W.2d 496, 504 (Minn. 2009) (quotation omitted). "A finding is clearly erroneous when there is no reasonable evidence to support the finding or when an appellate court is left with the definite and firm conviction that a mistake occurred." *State v. Rhoads*, 813 N.W.2d 880, 885 (Minn. 2012). But when the facts are not disputed, "the question of whether a waiver-of-counsel was knowing and intelligent is a constitutional one that is reviewed de novo." *Id.* "An invalid waiver and the corresponding denial of the right to counsel are structural errors that require reversal." *State v. Gant*, 996 N.W.2d 1, 7 (Minn. App. 2023).

Criminal defendants have the constitutional right to counsel in "all criminal prosecutions." U.S. Const. amend. VI; Minn. Const. art. I, § 6. But a defendant's right to counsel may be relinquished in three ways: (1) waiver, (2) waiver by conduct, or (3) forfeiture. *Jones*, 772 N.W.2d at 504. Waiver of counsel is valid if it is knowing, intelligent, and voluntary. *Id.* "The district court has a duty to ensure a valid waiver of the right to counsel." *Gant*, 996 N.W.2d at 6.

Minnesota Rule of Criminal Procedure 5.04, subdivision 1(4), sets forth the procedure that a district court must follow when a defendant charged with a felony wishes

4

to waive the right to counsel. Generally, a defendant charged with a felony cannot expressly waive their right to counsel unless he or she completes a written waiver form or provides their waiver on the record. Minn. R. Crim. P. 5.04, subd. 1(4). However, even without a formal waiver under rule 5.04, a defendant's express waiver is still constitutionally valid if the circumstances support that he "knowingly, voluntarily, and intelligently waived his right to counsel." *Gant*, 996 N.W.2d at 7. For the circumstances to establish a valid waiver, the record must reflect that the defendant waived his right to counsel "with eyes open," meaning that the defendant is aware of the potential consequences of proceeding without representation. *Rhoads*, 813 N.W.2d at 888.

"[W]aiver by conduct occurs if a defendant engages in dilatory tactics after he has been warned that he will lose his right to counsel." *Jones*, 772 N.W.2d at 505. This concept applies to defendants who "voluntarily engage in misconduct knowing what they stand to lose but are not affirmatively requesting to proceed pro se." *Id.* (quotation omitted). Before a defendant is considered to have waived his right to counsel by conduct, the district court must engage in the same colloquy necessary for affirmative waivers of counsel. *Id.*

Finally, a defendant waives his right to counsel by forfeiture when he "engages in extremely dilatory conduct." *Id.* (quotation omitted). This differs from waiver by conduct because "[f]orfeiture does not require the court to conduct a waiver colloquy with the defendant." *Id.* "Forfeiture is usually reserved for severe misconduct, when other efforts to remedy the situation have failed." *Id.*

Craven argues that he was denied his constitutional right to counsel because the district court failed to obtain a knowing, voluntary, and intelligent waiver of counsel from

5

him. Craven also contends that the district court erroneously determined that he waived his right to counsel by dilatory conduct. For the reasons set forth below, we agree.

### A. Craven was not adequately advised of the consequences of proceeding without counsel.

A valid waiver of the right to counsel *must* include an advisory to the defendant of the "nature of the charges," "all offenses included within the charges," the "range of allowable punishments," the facts that "there may be defenses" and that "mitigating circumstances may exist," and "all other facts essential to a broad understanding of the consequences of the waiver of the right to counsel, including the advantages and disadvantages of the decision to waive counsel." Minn. R. Crim. P. 5.04, subd. 1(4)(a)-(f).

Craven argues that the district court failed to obtain a valid waiver of counsel because he "was not adequately advised of the consequences of proceeding without counsel." We agree. It is undisputed that Craven never signed a written waiver of counsel. And, although the district court conducted an on-the-record colloquy related to the rule 5.04 components, the record before us demonstrates that the colloquy was insufficient to show that Craven's waiver of counsel was knowing, voluntary, and intelligent.

The record reflects that the discussion related to sentencing failed to sufficiently inform Craven of the possible punishments he was facing, such as the three-year mandatory minimum sentence applicable to the felony DWI count, and the possibility of consecutive sentences. In fact, as Craven points out, the record reflects that he specifically expressed some confusion when asked if he understood that the district court could impose consecutive sentences. Moreover, the record reflects that Craven repeatedly stated that he wanted to proceed to trial *with* counsel. *See Jones*, 772 N.W.2d at 505 (acknowledging

6

that the defendant "objected twice to proceeding without counsel" in determining that the defendant did not give a knowing, intelligent, and voluntary waiver of his right to counsel). The district court, however, declined to appoint him advisory counsel. And it is the district court's "duty to ensure a valid waiver of the right to counsel." *Gant*, 996 N.W.2d at 6. Despite this duty, the record reflects that it was the prosecutor in this case who primarily conducted the rule 5.04, subdivision 1(4) inquiry.

As a whole, the inquiry fell far short of the "intense inquiry" intended to make Craven aware of all facts essential to his broad understanding of the consequences of his waiver. *See Jones*, 772 N.W.2d at 504. Although district courts need not adhere to a strict waiver procedure, and the circumstances of the waiver may be considered, the waiver colloquy here lacked key aspects that are required for its sufficiency. Therefore, on this record, we cannot conclude that Craven validly waived his right to counsel.

B. **The district court erred in determining that Craven engaged in dilatory conduct.**

Craven also contends that "the district court erred in determining [that] he waived his right to counsel by conduct because [he] did not engage in dilatory conduct." Again, we agree. Dilatory is defined as "[d]esigned or tending to cause delay." *Black's Law Dictionary* 573 (11th ed. 2019). If a defendant engages in dilatory tactics after he has been warned that he will lose his right to counsel, waiver by conduct occurs. *Jones*, 772 N.W.2d at 505. In other words, "[o]nce a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed pro se and, thus, as a waiver of the right to counsel." *State v. Krause*, 817 N.W.2d 136, 148 n.10 (Minn. 2012).

7

Here, in finding that Craven waived his right to counsel by his conduct, the district court referenced the numerous trial settings and pretrial settings. But much of this delay occurred prior to Craven discharging his counsel and was not attributable to Craven. And these delays occurred prior to Craven being warned that he could lose his attorney if he engaged in dilatory tactics. Thus, any conduct occurring before Craven received this warning does not support a waiver based on conduct. *See id.*

Moreover, the record reflects that, although Craven was granted a continuance on October 4, 2022, after he fired his attorney, he was not advised of the consequences of failing to secure an attorney until November 8, 2022. This advisory occurred less than three months before the rescheduled trial date of January 23, 2023, which is far less than the one-year period described in *Jones*. *See* 772 N.W.2d at 506. And the record reflects that, during this time period, Craven attempted to retain counsel by reaching out to approximately 20 attorneys, of which only one responded. And the record further reflects that Craven's custodial status likely hampered his efforts to retain counsel. On this record, we conclude that the district court erred in finding that Craven engaged in dilatory conduct. Accordingly, Craven was denied his constitutional right to counsel.[1]

**Reversed and remanded.**

---

[1] The state also argues that Craven's "dilatory tactics were so extreme that he forfeited his right to counsel." *See Jones*, 772 N.W.2d at 505 (stating that, when the defendant's conduct arises to the level of forfeiture, a waiver colloquy is not required). But because we conclude that the district court erred in finding that Craven engaged in dilatory conduct, the state's forfeiture argument also fails.